PAMELA KOSLYN
pkoslyn@koslynlaw.com
LAW OFFICES OF PAMELA KOSLYN
6255 Sunset Blvd., Suite 714
Hollywood, California 90028-7408
Telephone    (323) 467-2200
Fax          (323) 517-2283

Attorneys for Defendant ROBERT B. PERRY

# United States District Court
# Central District of California

| | |
|---|---|
| SPARKNET HOLDINGS, INC., a Nevada corporation; SPARKNET COMMUNICATIONS, L.P., a Nevada partnership,<br><br>　　　　　Plaintiffs,<br><br>　　　　v.<br><br>ROBERT PERRY, an individual; KRIS SWEETON, an individual; INDIE RANCH MEDIA, INC., a Colorado corporation; NETMIX BROADCASTING NETWORK, INC., an unknown entity; and JOHN DOES 1-5,<br><br>　　　　　Defendants. | Case No. CV 08-8510-GHK (PLAx)<br><br>DEFENDANT PERRY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO APPLICATION FOR DEFAULT JUDGMENT<br><br>Hearing:<br>Date:　　April 13, 2009<br>Time:　　9:30 a.m.<br>Place:　　Courtroom 650 |

MEMORANDUM OF POINTS AND AUTHORITIES

I.

INTRODUCTION TO THIS OPPOSITION AND TO THIS CASE

The instant proceeding follows the default entered by the Clerk on March 10, 2009, which default is the subject of Perry's Motion to Set Aside, to be filed on April 1st, 2009, and to be heard on April 27th, 2009. Perry's counsel conducted a pre-filing conference with Plaintiffs' counsel on March 12, 2009, shortly after being retained in this matter, and April 1st was the earliest that such motion could be filed. *See* Declaration of Pamela Koslyn, ¶¶ 2 - 3. Ignoring Plaintiff's wholly unfounded claim to damages from the alleged infringement, this Court should deny this Application for Default Judgment because the underlying default itself should be set aside. Perry's efforts to seek such relief is prompt, and given the substantial nature of the damages claimed by Plaintiffs, Perry's default should not stand, and should not ripen into a judgment.

This Opposition incorporates by reference, as if set forth in full, Perry's Motion to Set Aside Default and its supporting documents. Perry's Motion to Set Aside has been necessitated by Plaintiffs and their hyper-aggressive counsel, Newman & Newman. The Newman firm has refused to grant an extension to respond to Plaintiffs' Complaint, refused to stipulate to this relief from default, and perhaps most egregiously, refused to recuse themselves from this representation, despite a conflict of interest. Moving party Robert Perry will make the apparently necessary motion to disqualify Newman & Newman at the earliest available opportunity.

LAW OFFICES OF PAMELA KOSLYN
6255 SUNSET BOULEVARD, SUITE 714
HOLLYWOOD, CALIFORNIA 90028-7408
(323) 467-2200

Perry, a New Yorker, was taken by surprise with this lawsuit[1], having never been sued before, having been in business with Plaintiffs since 2003, having been represented by Plaintiffs' counsel in 2005, and having not gotten so much as a "cease and desist" warning prior to being served. Perry and his transactional New York counsel, Jeffrey Nogee, attempted to get an extension to respond, to get Plaintiffs' counsel to acknowledge the obvious conflict of interest in this representation, and to get the facts underlying Plaintiffs' sparsely drafted Complaint, without any success. Instead, Plaintiffs have "responded" with ploys including refusing to grant Perry an extension to respond to the instant Complaint yet granting an extension to co-defendant Indie Ranch, ignoring Nogee's telephone calls and e-mails made on behalf of Perry, taking Perry's default, and most recently, attempting to obtain default judgment against him. Perry now asks this Court to set aside this default so he can defend himself on the merits, and pursue his counterclaim against Plaintiffs.

Perry was one of the early creators of the "JACK FM" radio format, on an American Internet radio stream in 2000. Perry named the station after a fictitious persona, "Cadillac Jack" Garrett, "a hard-living radio cowboy." The folklore invented by Perry was that Garrett, a DJ who had worked a lot of "big sticks," finally got his own radio station and after years of being told what music he hade to play, created a station where the motto was "playing what we want." In 2003, Perry applied for the service marks relating to this radio format, with the first use date May 1, 2001 ("Jack Marks"). *See* Declaration of Robert Perry ("Perry Decl."), ¶ 3.

Later in 2003, Perry licensed the Jack Marks to Bohn and Associates

---

[1] Indeed, one of the surprises in the Complaint itself is that it obscures important facts: One, that Perry was the original creator and owner of the subject trademarks; two, that Perry first licensed, then conditionally sold, the subject trademarks to Plaintiffs; and three, that the sum and substance of Plaintiffs' alleged "infringement" is co-defendant NetMix's one-time press release and co-defendant Kris Sweeton's private email to a BACKTRAX, using the Jack Marks nominally to describe Perry.

LAW OFFICES OF PAMELA KOSLYN
6255 SUNSET BOULEVARD, SUITE 714
HOLLYWOOD, CALIFORNIA 90028-7408
(323) 467-2200

1 Media, Inc., which was Plaintiffs' predecessor ("BohnCo").  In 2005, Perry conditionally sold the Jack Marks to Plaintiffs and contracted to work for them as a consultant in exchange for a 50% share of net revenue from licensing the Jack Marks.  This 50% profit share was agreed to continue for as long as Plaintiffs were monetizing the Jack Marks.  The condition of the sale was that if Perry was not paid a $300,000 "Minimum Compensation" provided for in the Consulting Agreement, then ownership in the Jack Marks would revert to Perry.  Before the parties had even finished the sale and consultancy agreements, BohnCo wanted to sue an alleged infringer of the Jack Marks.  Newman & Newman represented both BohnCo and Perry, and by virtue of the parties' agreements, the Newman firm's legal fees were deducted from the gross revenue before Perry's 50% net share was remitted, thus making Perry the payor of half of those fees.  Id., Perry Decl., ¶¶ 4 - 6.

In late 2008, when Perry was due to receive either the "top up" amount so that he would receive his $300,000 Minimum Compensation, or the Jack Marks back, Plaintiffs contended that the $50,000 paid pursuant to the trademark sale agreement was credited toward the $300,000 Minimum Compensation, and that Perry had materially breached and failed to cure his breach of the Consultancy Agreement, and therefore was due nothing further from Plaintiffs.  Id., Perry Decl. ¶ 7; Declaration of Jeffrey Nogee ("Nogee Decl."), ¶ 4.

There is no cognizable trademark infringement here, instead, this lawsuit is a "sucker punch" tactic.  This misuse of process has been calculated to "starve" Perry out, and to increase Perry's costs so that Perry will be coerced into settling for less than that to which he is entitled due to Plaintiffs' breach of the Consultancy Agreement.  Besides wrongfully cutting off income to Perry and depriving him of the source of that income, Plaintiffs chose the venue of this faraway California court, and Plaintiffs are shamelessly trying to use the same lawyers who had previously represented Perry in a Jack Marks infringement case

1  four years ago, and thus force Perry to bear 50% of such lawyers' cost.

2

3  II.

4  <u>THERE IS GOOD CAUSE TO SET ASIDE THIS DEFAULT</u>

5  Federal Rule of Civil Procedure 55 subsection (c) provides that a
6  court to set aside a default for "good cause shown." Fed. R. Civ. Pro. 55,
7  subsection (c). A district court has broad discretion to determine whether to set
8  aside a default pursuant to Rule 55 subsection (c). *See* <u>Brady v. United States</u>, 211
9  F.3d 499, 504 (9th Cir.2000) (noting that district court's discretion is "especially
10 broad" in setting aside default rather than a default judgment)). The standard for
11 setting aside an order of default is less rigorous than the standard for setting aside a
12 default judgment. *See* <u>McManus v. American States Ins. Co.</u>, 201 F.R.D. 493, 500
13 (C.D. Cal.2000)

14 In considering a motion to set aside default under Rule 55, subsection
15 (c), courts apply an equitable analysis to determine whether the moving party has
16 established good cause to vacate the default. *See* <u>Pioneer Inv. Servs. Co. v.
17 Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74
18 (1993); <u>TCI Group Life Insurance Plan v. Knoebber</u>, 244 F.3d 691, 696 (9th
19 Cir.2001) (observing that an analysis of "good cause" for a Rule 55 subsection (c)
20 motion necessarily encompasses <u>Pioneer</u>' s equitable analysis). The "good cause"
21 analysis requires the Court to consider three factors: (1) whether the moving party's
22 culpable conduct led to the default; (2) whether the moving party has a meritorious
23 defense; or (3) whether re-opening the default would prejudice the non-moving
24 party. *See* <u>Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.</u>, 375
25 F.3d 922, 926 (9th Cir.2004) (citations omitted). The Ninth Circuit has expressed
26 an unequivocal preference for adjudicating cases on their merits. *See* <u>Eitel v.
27 McCool</u>, 782 F.2d 1470, 1472 (Cases should be decided upon their merits
28 whenever reasonably possible.").

In this case, Perry can demonstrate both a lack of culpability and a meritorious defense, and there is no apparent undue prejudice to the Plaintiffs by setting aside this default.

### A. Perry's Conduct Was Not Culpable

A party moving to set aside a default is "culpable" if he " has received actual or constructive notice of the filing of [an] action and *intentionally* failed to answer." ' TCI Group Life Insurance Plan, supra, 244 F.3d at 697 (citations omitted) (emphasis in original).  However, "neglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decision-making, or otherwise manipulate the legal process is not intentional' . . . and therefore not necessarily . . . culpable or inexcusable." Id. at 697-98.  A defendant's neglectful failure to answer, without more, is typically not "culpable" unless "there is no explanation of the default inconsistent with a devious, willful, or bad faith failure to respond." Id. at 698.

Here, Perry was served with process on January 23, 2009, and had never been sued before, much less by parties with whom he had been in business and in regular contact with for over five years, yet who filed this suit without so much as a "cease and desist" warning. *See* Perry Decl., ¶¶ 2, 8.  Moreover, Perry not only did not understand the allegations against him, but did not comprehend how the Newman law firm which had formerly represented both him and Plaintiffs[2] in a lawsuit accusing another party of infringing the same trademarks could now turn around and sue him for the same thing. Perry Decl. ¶ 9.  Perry contacted Jeffrey Nogee, the lawyer who had represented him in the transactions by which he first licensed and then conditionally conveyed the subject "Jack Marks" to

---

[2] Bohn and Associates Media, Inc. and Robert Perry v. Bonneville Int'l Corp., No. 05C2677, N.D. Ill.

Plaintiffs. Id.

Then over the course of the several weeks, Nogee had telephone conferences with more than one member of Newman & Newman, the firm representing Plaintiffs, and exchanged voicemails and e-mails, but Nogee had trouble getting the Newman firm to respond to him, with calls and emails going unreturned. Nogee Decl., ¶¶ 5 - 7. When Nogee managed to confer with someone at the Newman firm, Nogee suggested the propriety of a Rule 11 motion, and attempted to get information about the basis for the lawsuit, which was remarkably short on substantive allegations regarding any alleged trademark infringement by Perry or the other named defendants; also, Nogee requested that the Newman firm recuse themselves because of the conflict of interest apparent from the fact that both the previous litigation against Bonneville and the instant litigation involved the "Jack Marks." Newman refused, and contended that there was similarity at all between the prior and instant representation. Id., Nogee Decl. ¶¶ 6, 8. Nogee asked for an extension of time within which Perry could respond, and Derek Newman refused, stating that the amount of time Nogee requested was too long. Nogee sent Newman a draft stipulation to extend time to respond, and Newman ignored it, but Newman's refusal to grant the extension that Nogee had asked for was equivocal. Id., ¶¶ 9. 11 . Perry, though a New Yorker, was diligently trying to hire California counsel, and did not believe that Newman, a lawyer with whom he had worked on the same side four years ago (in the trademark litigation Bohn and Associates Media, Inc. and Robert Perry v. Bonneville), and 50% of whose fees Perry had paid for,[3] would take Perry's default. Perry Decl., ¶¶ 2, 9 - 10; Nogee Decl., ¶12.

There can be no showing off any deviousness, willfulness, or bad faith on Perry's part sufficient to justify a finding of culpability.

---

[3] In late 2005, Perry co-financed yet another of Plaintiffs' "Jack Marks" trademark infringement suits filed by the Newman firm: SparkNet v. Clear Channel, No. CV-01641, S.D. Cal.

### B. Perry Has A Meritorious Defense to Plaintiffs' Complaint

In order to justify an order setting aside a default, a defendant must "present the district court with specific facts that would constitute a defense." Franchise Holding II, LLP, supra, 375 F.3d at 926 (citing Madsen v. Bumb, 419 F.2d 4, 6 (9th Cir.1969)). Although this burden cannot be met by offering conclusory statements or general denials without supporting facts (id.), it is not an extraordinarily high burden. TCI Group Life Insurance Plan, 244 F.3d at 700. Rather, the defendant need only allege sufficient facts or law to show that a legitimate defense exists. Id. In this context, courts leave questions regarding the truth of any such factual allegations for a later stage in the litigation. Id. (citing Falk v. Allen, 739 F.2d 461, 463 (9th Cir.1984)).

Here, Perry can allege a defense, as well as a meritorious counterclaim against Plaintiffs, and an Answer and Counterclaim are lodged with this Motion, underscoring Perry's intent to litigate the case on the merits. *See* Perry Decl., ¶ 11, and attached Answer and Counterclaim.

### C. Prejudice to Plaintiffs

Prejudice exists if a party's ability to pursue its claims is hindered. *See* Falk, supra, 739 F.2d at 463. No prejudice exists, however, simply because a party is compelled to litigate its claims on the merits, or resolution of the matter is delayed. *See* TCI Group Life Insurance Plan, supra, 244 F.3d at 701.

In this case, there is no evidence to suggests that Plaintiffs would suffer any cognizable prejudice if the Court sets aside the entry of default.[4]

Perry should have filed an answer or other responsive pleading to Plaintiffs' Complaint on time, but Perry's failure to do so has not hindered

---

[4] It is apparent from the Court's docket that it took Plaintiffs' counsel three tries to obtain Perry's default, and that Plaintiffs further attempted to have a default judgment entered against Perry for $200,000 on 10 days' mailed notice, but such legal fees are attributable to Plaintiffs' counsel's errors, the cost of which should not be deemed prejudicial to them.

Plaintiffs' ability to pursue their claim, such as it is.

### III.
### CONCLUSION

Good cause having been demonstrated, this Court is respectfully requested to deny Plaintiffs' Application for Default Judgment, or at a minimum, to continue its hearing until Perry's Motion to Set Aside is heard.

Dated: March 30th, 2009            Respectfully submitted,

LAW OFFICES OF PAMELA KOSLYN

By:  /pamela koslyn/
    PAMELA KOSLYN
Attorneys for Defendant ROBERT PERRY