1  PAMELA KOSLYN [SBN 120605]
   pkoslyn@koslynlaw.com
2  LAW OFFICES OF PAMELA KOSLYN
   6255 Sunset Blvd., Suite 714
3  Hollywood, California 90028-7408
   Telephone    (323) 467-2200
4  Fax          (323) 517-2283

5  Attorneys for Defendant ROBERT B. PERRY

6

7

8                  **United States District Court**

9                  **Central District of California**

10

11  SPARKNET HOLDINGS, INC.,           Case No. CV 08-8510-GHK (PLAx)
    *et al.*,
12                                     **OPPOSITION TO PLAINTIFFS' *EX***
              Plaintiffs,              ***PARTE* APPLICATION FOR**
13                                     **SHORTENING TIME OF MEET AND**
              *v.*                     **CONFER PERIOD FOR MOTION**
14                                     **FOR RECONSIDERATION**
    ROBERT PERRY, an individual; et
15  al.,

16            Defendants.
    ROBERT PERRY,
17
              Counterclaimant,
18
              *v.*
19
    SPARKNET HOLDINGS, INC.,
20  SPARKNET COMMUNICATIONS,
    L.P.,
21
              Counterdefendants.
22

23

24

25

26

27

28

LAW OFFICES OF PAMELA KOSLYN
6255 SUNSET BOULEVARD, SUITE 714
HOLLYWOOD, CALIFORNIA 90028-7408
(323) 467-2200

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3

### INTRODUCTION

4

By filing the instant *Ex Parte* Application ("*Ex Parte*"), SparkNet's

5

new counsel regrettably shows the same expense-churning bad faith tactics that

6

prior disqualified counsel showed.  Just as prior counsel took Defendant and

7

Counterclaimant Perry's default, refused to stipulate to relief from such default,

8

and in fact then sought a default judgment against Perry, current counsel now seeks

9

an *Ex Parte* order allowing a sped up timetable to file an ill-conceived motion.

10

On June 16, 2009, this Court disqualified SparkNet's prior counsel,

11

the Newman firm.  New counsel, who filed the first papers in this matter on June

12

26, 2009, waited  two weeks before meeting and conferring on July 9, 2009, about

13

expediting a Motion for Reconsideration ("Motion") of such order.

14

According to the Ex Parte states that the basis for the intended Motion

15

is a 20-year-old case,[1] and a claim that this Court  erred in granting the Motion to

16

Disqualify.  But the Court has presumably already considered this 20-year-old case

17

and its "joint client exception," since it was discussed in a case cited in Perry's

18

Motion.[2]

19

The Newman firm's disqualification could not have been a surprise to

20

SparkNet.  Perry's transactional counsel first met and conferred with them asking

21

them to recuse themselves from this representation back in February, 2009, and the

22

undersigned met and conferred with the Newman firm a month later (and had to

23

wait considerably longer than the requisite 20 days before filing the Motion to

24

Disqualify due to Perry's default).  Nonetheless, after the Newman firm's

25

[1]   The 20 year old case is Christensen v. U.S. Dist. Court, 844 F. 2d 694 (9th Cir. 1988),
       and the lawyer plaintiff who had been disqualified was none other than Terry

26    Christensen, recently found guilty of conspiracy with wiretapper Anthony Pellicano,
       and now serving a three-year jail term handed down by Judge Dale S. Fischer.

27

[2]   *See* Western Continental Operating Co. v. Natural Gas Corp., 212 Cal. App. 3d 752

28    at p. 761-762, 261 Ca. Rptr. 100 (1989).

LAW OFFICES OF PAMELA KOSLYN
6255 SUNSET BOULEVARD, SUITE 714
HOLLYWOOD, CALIFORNIA 90028-7408
(323) 467-2200

LAW OFFICES OF PAMELA KOSLYN
6255 SUNSET BOULEVARD, SUITE 714
HOLLYWOOD, CALIFORNIA 90028-7408
(323) 467-2200

1  disqualification, SparkNet apparently did not rush to hire new counsel

2  immediately, and in fact, more than three weeks elapsed between the time

3  Newman's firm was disqualified and new counsel's contact to meet and confer.

4     But the biggest effrontery of SparkNet's instant *Ex Parte* is in what it

5  asks  for: eight days shaved off Local Rule 7.3's requisite 20 day "meet and confer"

6  period before filing a motion, to enable SparkNet to set the hearing on its Motion

7  on August 10, 2009 instead of on August 24, 2009.  In fact, SparkNet's counsel's

8  original reason for asking for special treatment for its Motion was in order to meet

9  a believed filing deadline for a writ to the 9th Circuit on the disqualification issue.

10  Subsequently, SparkNet's counsel determined that this belief was wrong, so now

11  the request is solely for the sake of a slightly quicker decision.

12     SparkNet's *Ex Parte* offers to shoulder some of the burden otherwise

13  put on Perry's counsel by shifting Perry's Opposition's deadline, but does not

14  simply accept that Local Rule 7.3 applies to them, too (or that maybe they should

15  reimburse Perry for the legal fees incurred in having to oppose this *Ex Parte* if it is

16  denied, or that maybe they shouldn't even bother with either this *Ex Parte* or the

17  intended Motion).  Moreover, there is no relief for the Court's burden in having to

18  expedite such Motion.  This Court should deny this *Ex Parte* to remind this litigant

19  what equal justice under the law means.

20

21                               ARGUMENT

22

23     **A.    *Ex Partes* Are Disfavored.**

24     *Ex Parte* applications are disfavored for good reason –they are

25  inherently unfair.  "[*E]x parte* proceedings pose a threat to the adversary system.

26  By allowing both sides to have their say, the adversary system promotes accuracy,

27  fairness, and consistency --the hallmarks of our system of justice. That is not to say

28  that '[a]dversary proceedings will ... magically eliminate all error,' unfairness, or

LAW OFFICES OF PAMELA KOSLYN
6255 SUNSET BOULEVARD, SUITE 714
HOLLYWOOD, CALIFORNIA 90028-7408
(323) 467-2200

1    inconsistency.  But, when one side proceeds *ex parte*, the risk of such dangers

2    inevitably is compounded.  In re Intermagnetics America, Inc., 101 B.R. 191,

3    192 (C.D. Cal.,1989) (citing Alderman v. United States, 394 U.S. 165, 184, 89 S.

4    Ct. 961, 22 L. Ed. 2d 176 (1969).

5            *Ex parte* applications contravene the structure and spirit of the Federal

6    Rules of Civil Procedure and the Local Rules of this Honorable Court.  Id. at

7    p. 193.  Indeed, "[b]oth contemplate that *noticed* motions should be the rule and

8    not the exception."  Id., emphasis in original; *see also* Granny Goose Foods, Inc. v.

9    Brotherhood of Teamsters, Local No. 70, 415 U.S. 423, 438-39 (1974) ("The

10   stringent restrictions imposed by ... Rule 65 on the availability of *ex parte*

11   temporary restraining orders reflect the fact that our entire jurisprudence runs

12   counter to the notion of court action taken before reasonable notice and an

13   opportunity to be heard has been granted both sides of a dispute.").

14           As recognized by the *Intermagnetics America* court:

15
16   Timetables for the submission of responding papers and

     for the setting of hearings are intended to provide a
17
     framework for the fair, orderly, and efficient resolution
18
     of disputes.  *Ex parte* applications throw the system out
19
     of whack.  They impose an unnecessary administrative
20
     burden on the court and an unnecessary adversarial
21
     burden on opposing counsel who are required to make a
22
     hurried response under pressure, usually for no good
23
     reason. They demand priority consideration, where such
24
     consideration is seldom deserved. In effect, they put the
25
     applicant "ahead of the pack," without cause or
26
     justification.
27
     In re Intermagnetics America, Inc., 101 B.R. at 193.
28

1        Thus, *ex parte* orders are available only in unusual situations, such as

2  (1) where there is some genuine urgency such that "immediate and irreparable

3  injury, loss, or damage will result to the applicant before the adverse party or his

4  attorney can be heard in opposition." *See* Fed.R.Civ.P. 65(b) (temporary

5  restraining order); (2) where there is a danger that notice to an opposing party will

6  result in that party's flight, destruction of evidence, *see, e.g.,* <u>Franks v. Delaware</u>,

7  438 U.S. 154, 169, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978) ("The pre-search

8  proceeding is necessarily *ex parte*, since the subject of the search cannot be tipped

9  off to the application for a warrant lest he destroy or remove evidence."), or

10  secretion of assets, *see, e.g.,* Cal. Code Civ. Proc. § 485.010 *et seq. (ex parte*

11  hearing procedure for obtaining writ of attachment); (3) when a party seeks a

12  relatively routine order ( *e.g.,* to file an overlong brief or to shorten the time within

13  which a motion may be brought). <u>In re Intermagnetics America, Inc</u>., 101 BR at

14  193-94. This latter category still requires a showing of good cause, which

15  SparkNet's *Ex Parte* has not shown.

16

17            **B.**     **<u>SparkNet's *Ex Parte* Lacks Good Cause.</u>**

18        On a showing of "good cause," a court may sign an *ex parte* order

19  extending the time within which any act is required or allowed to be done. *See*

20  Fed. R. Civ. P. 6 (b) (1). However, the moving party's burden under such

21  circumstances is not a light one – the *ex parte* application must show why the

22  moving party should be allowed to "go to the head of the line in front of all other

23  litigants and receive special treatment." <u>Mission Power Engineering Co. v.</u>

24  <u>Continental Cas. Co.</u>, 883 F. Supp. 488, 492 (C.D. Cal. 1995). In an *ex parte*

25  application, the evidence must show that the moving party's cause will be

26  irreparably prejudiced if the underlying motion is heard according to regular

27  noticed motion procedures. Further, it must be established that the moving party is

28  without fault in creating the crisis that requires *ex parte* relief, or that the crisis

LAW OFFICES OF PAMELA KOSLYN
6255 SUNSET BOULEVARD, SUITE 714
HOLLYWOOD, CALIFORNIA 90028-7408
(323) 467-2200

LAW OFFICES OF PAMELA KOSLYN
6255 SUNSET BOULEVARD, SUITE 714
HOLLYWOOD, CALIFORNIA 90028-7408
(323) 467-2200

1    occurred as a result of excusable neglect.  Id.  In the instant situation, SparkNet

2    cannot satisfy the good cause standard.

3              There is no harm to SparkNet, let alone irreparable harm, if

4    SparkNet's Motion for Reconsideraton of this Court's order was heard in the

5    normal course of business as a noticed motions –SparkNet had conceded as much

6    by referring to the shortening of time as "beneficial."  Wanting a quicker decision

7    does not constitute good cause, even on a matter considered very important.  There

8    is no dispute that the disqualification of counsel is important, but Perry's counsel

9    followed the rules and waited the mandated number of days after meeting and

10   conferring before filing the Motion to Disqualify the Newman firm on May 7,

11   2009.  This Court ordered the Newman firm disqualified on June 16, 2009.  Perry's

12   counsel had asked the Newman firm to recuse themselves back in February, so

13   there is no excuse for SparkNet's lack of preparation in dealing with its counsel's

14   disqualification.  If SparkNet really believed that this issue was so urgent that its

15   Motion should be filed by July 20, as it now asks, all it had to do to comply with

16   Rule 7.3 was to satisfy the meet and confer requirement by July 1.  Instead,

17   SparkNet created this emergency itself --SparkNet's counsel did not meet and

18   confer until July 9, yet despite its own delay, now seeks an unwarranted disruption

19   of everyone else's schedule to rush a motion.  "To show that the moving party is

20   without fault, or guilty only of excusable neglect, requires more than a showing

21   that the other party is the sole wrongdoer.  It is the creation of the crisis--the

22   necessity for bypassing regular motion procedures--that requires explanation."

23   Mission Power Engineering Co., 883 F. Supp. at 493.  Here, SparkNet's *Ex Parte*

24   does not state that Perry's counsel did anything wrong, but additionally, it fails to

25   explain why it squandered the time between June 16 and July 9.   SparkNet's

26   manipulative tactics should not be countenanced.

27

28   / / /

LAW OFFICES OF PAMELA KOSLYN
6255 SUNSET BOULEVARD, SUITE 714
HOLLYWOOD, CALIFORNIA 90028-7408
(323) 467-2200

1    **C.    SparkNet's *Ex Parte* is Incomplete and Improper In Form**.

2    "An ex parte motion should *never* be submitted by itself. It *must*

3    *always* be accompanied by a separate proposed motion for the ultimate relief the

4    party is seeking." <u>Mission Power Engineering Co. v. Continental Cas. Co.</u>, 883 F.

5    Supp. 488, 492 ©. D. Cal., 1995) (emphasis added).

6    Properly designed *ex parte* motion papers thus contain

7    two distinct motions or parts. The first part should

8    address only why the regular noticed motion procedures

9    must be bypassed. The second part consists of papers

10   identical to those that would be filed to initiate a regular

11   noticed motion (except that they are denominated as a

12   "proposed" motion and they show no hearing date.)

13   *These are separate, distinct elements for presenting an ex*

14   *parte motion and should never be combined.*"

15   <u>Id</u>., emphasis in original.  The subject *Ex Parte* again disregards the rules, omitting

16   the requisite separate motion to shorten time.  Accordingly, it should be denied on

17   this basis as well.

18

19                              <u>CONCLUSION</u>

20   SparkNet has not demonstrated irreparable harm from having a

21   hearing on noticed motion, and is at fault for this supposed emergency, so it cannot

22   satisfy the conditions for an *ex parte* order.   SparkNet should be made to follow

23   the rules like everyone else.   This *Ex Parte* should be denied.

24   Dated: July 11, 2009                    Respectfully submitted,

25
                                            LAW OFFICES OF PAMELA KOSLYN
26
                                            By:    /pamela koslyn/
27                                                  PAMELA KOSLYN

28                                          Attorneys for Def./Counterclaimant PERRY