William A. Delgado (Bar No. 222666)
wdelgado@willenken.com
WILLENKEN WILSON LOH & LIEB LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, CA 90017
Tel: (213) 955-9240
Fax: (213) 955-9250

Attorneys for Plaintiffs and Counter-Defendants
SPARKNET HOLDINGS, INC. and
SPARKNET COMMUNICATIONS L.P.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPARKNET HOLDINGS, INC., a Nevada corporation, SPARKNET COMMUNICATIONS, L.P., a Nevada partnership,<br><br>        Plaintiffs,<br><br>v.<br><br>ROBERT PERRY, an individual, KRIS SWEETON, an individual, INDIE RANCH MEDIA, INC., a Colorado corporation, NETMIX BROADCASTING NETWORK, INC., an unknown entity, and JOHN DOES 1-5;<br><br>        Defendants. | Case No.: CV 08-08510 GHK (PLAx)<br><br>**PLAINTIFFS' RENEWED NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT ROBERT PERRY'S COUNTERCLAIM PURSUANT TO FRCP 12(B)(3) AND 12(B)(6)**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: August 10, 2009<br>Time: 9:30 a.m.<br>Judge: The Honorable George H. King |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 10, 2009, at 9:30 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable George H. King, located in Courtroom 650 at 255 E. Temple Street, Los Angeles, California, Plaintiffs SparkNet Holdings, Inc. and SparkNet Communications, L.P. (together, "SparkNet") will, and hereby do, move the Court for an order dismissing the Third Counterclaim for Conversion in Defendant Robert Perry's Counterclaims for failure to state a claim for relief and further dismissing all of Perry's Counterclaims for improper venue.

This motion is made pursuant to Rules 12(b)(6) and 12(b)(3) of the Federal Rules of Civil Procedure. SparkNet's Rule 12(b)(6) argument for dismissing the Third Counterclaim for Conversion is based upon the facts that Perry fails to allege he ever owned, possessed, or controlled the property which he claims was converted; in addition, Perry's First Counterclaim for Breach of Contract cannot be recast as a claim for conversion, and must therefore be dismissed pursuant to New York law, which governs the contract he claims was breached. SparkNet's Rule 12(b)(3) argument for dismissing all Counterclaims is based upon the facts that all three Counterclaims are based upon a purported breach of a Consulting Agreement executed by SparkNet and Perry on or about June 16, 2005 ("Consulting Agreement"); that the Consulting Agreement contains a clear, express, and valid forum selection clause specifying that the exclusive venue for any matter relating to the Consulting Agreement or its enforcement is New York City; that all Counterclaims are subject to that forum selection clause; and that enforcement of the clause is consistent with public policy and the expectations of the parties and promotes consistency and uniformity in the interpretation and enforcement of the Consulting Agreement.

This Motion is based upon this Notice, the supporting Memorandum of Points and Authorities, and the declaration of Patrick Bohn, previously filed on May 26, 2009 (Docket No. 62); upon the entire record on file in this action; and upon any other or

1  further papers filed or arguments made in support of the motion at or before the hearing

2  thereon.

3        The original motion was made following the conference of counsel pursuant to

4  Local Rule 7-3, which took place on May 13, 2009.  This renewed motion follows the

5  disqualification of the Newman firm on June 16, 2009 as permitted by the Court's

6  Order on Disqualification.

7

8  DATED: July 15, 2009                    WILLENKEN WILSON LOH & LIEB LLP

9

10

11                                         By: */s William A. Delgado*                    .
                                               William A. Delgado

12                                             Attorney for Plaintiffs and Counter-Defendants
                                               SparkNet Holdings, Inc. and SparkNet

13                                             Communications, L.P.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

I.      Introduction…………………………………..…………………………… 1

II.     Statement of Facts………………………………………………..… 1

III.    PERRY'S THIRD COUNTERCLAIM FOR CONVERSION
        FAILS UNDER NEW YORK LAW…………………………………… 3

        A.      Standard of Review……………………………………………… 3

        B.      Perry's Conversion Counterclaim Fails As A Matter of Law…………4

IV.     PERRY'S COUNTERCLAIM SHOULD BE DISMISSED
        IN ITS ENTIRETY BECAUSE VENUE IS ONLY PROPER
        IN THE CITY OF NEW YORK…………………………………..…… 7

        A.      The Forum Selection Clause is Presumptively
                Valid And Does Not Contravene Public Policy
                Or Principles of Fairness…………………………………… 7

                1.      THE FORUM SELECTION CLAUSE IS NOT
                        the RESULT OF FRAUD OR UNDUE INFLUENCE………………… 8

                2.      PERRY, WHO LIVES IN NEW YORK, CANNOT
                        ESTABLISH THAT NEW YORK IS A FORUM SO
                        GRAVELY DIFFICULT AND INCONVENIENT AS TO
                        DEPRIVE HIM OF HIS DAY IN COURT…………………………… 9

                3.      ENFORCEMENT OF THE FORUM SELECTION
                        CLAUSE DOES NOT CONTRAVENE ANY STRONG
                        PUBLIC POLICY OF CALIFORNIA………………………………… 10

        B.      Under New York Law, the Forum Selection Clause Is
                Mandatory And Should Be Enforced…………………………..… 12

V.      CONCLUSION……………………………………………………..…… 14

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## TABLE OF AUTHORITIES

2

3
*Abbott Labs. V. Takeda Pharm. Co.*
    476 F.3d 421, 423 (7th Cir. 2007)… ………………………………………… 12

4

5
*Aramony v. United Way*
    949 F. Supp. 1080, 1086 (S.D.N.Y. 1996) ……………………………….. 6

6

7
*Bank of America Corp. v. Lemgruber*
    385 F. Supp.2d 200, 222 (S.D.N.Y. 2005) ……………………………….. 6

8

9
*Batchelder v. Kawamoto*
    147 F.3d 915, 919 (9th Cir. 1998) ……………………………………….. 8

10

11
*Bell Atl. Corp. v. Twombly*
    550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) ……..……… 3

12

13
*Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc*
    690 F. Supp. 891, 894-96 (C.D. Cal. 1988) ……………………………… 7

14

15
*Cambridge Nutrition A.G. v. Fotheringham*
    840 F. Supp. 299, 301 (S.D.N.Y. 1994) ………………………………….. 13

16

17
*Carnival Cruise Lines, Inc. v. Shute*
    499 U.S. 585, 593-94, S. Ct. 1522, 113 L. Ed. 2d 622 (1991) ……………… 8

18

19
*Castaldi v. 39 Winfield Assoc.*
    30 A.D.3d 458, 820 N.Y.S.2d 279 (2006) ………………………………….. 5

20

21
*Cervantes v. City of San Diego*
    5 F.3d 1273, 1274 (9th Cir. 1993) …………………………………………… 3

22

23
*Colavito v. New York Organ Donor Network, Inc.*
    8 N.Y.3d 43, 49-50, 827 N.Y.S.2d 96 (N.Y. Ct. App. 2006) ……………… 4

24

25
*ESI, Inc. v. Coastal Power Production, Co.*
    995 F. Supp. 419, 433 (S.D.N.Y. 1998) …………….…………………… 6

26

27
*Fiorenti v. Central Emergency Physicians, PLLC*
    305 A.D.2d 453, 762 N.Y.S.2d 402, 404 (2003) …………………………… 6

28

*Guadagno v. E\*Trade Bank*
    592 F. Supp. 2d 1263, 1269 (C.D. Cal. 2008) ……………………………… 4

*Jack Winter, Inc. v. Koratron Co*
    326 F. Supp. 121, 126 (N.D. Cal. 1971)… …………………………………… 9

*Kelso Enter., Ltd. v. M/V Wisida Frost*
    8 F. Supp. 2d 1197, 1201 (C.D. Cal. 1998) ………………………………… 7

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*
    858 F.2d 509, 513 (9th Cir. 1988) ………………………………………… 7

*M/S Bremen v. Zapata Off-Shore Co.*
    407 U.S. 1, 10, 15, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972) ………………. 7

*MBL Life Assurance Corp. v. 555 Realty Co.*
    240 A.D.2d 375, 658 N.Y.S.2d 122 (1997) ………………………………… 6

*Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001) ………………………………….. 3

*Peters Griffin Woodward, Inc. v. WCSC, Inc.*
    88 A.D.2d 883, 884, 45 N.Y.S.2d 599, 600 (1982) ………………………… 5

*Phillips v. Audio Active Ltd.*
    494 F.3d 378, 384-86 (2nd Cir. 2007) ……………………………………… 12

*R.A. Argueta v. Banco Mexicano S.A.*
    87 F.3d 320, 324 (9th Cir. 1996) …………………………………………..7

*Richards v. Lloyd's of London*
    135 F.3d 1289, 1294 (9th Cir. 1998) ……………………………………10

*Rini Wine Co. v. Guild Wineries & Distilleries*
    604 F. Supp. 1055, 1058 (N.D. Ohio 1985) ………………………………… 9

*Selinger Enterprises, Inc. v. Cassuto*
    50 A.D.3d 766, 860 N.Y.S.2d 533, 536 (2008) …………………………….. 5

*Spradlin v. Lear Siegler Mgmt. Servs. Co.*
    926 F.2d 865, 867 (9th Cir. 1991) …………………………………………… 7

*Weber v. Dep't of Veterans Affairs*
  521 F.3d 1061, 1065 (9th Cir. 2008) ……………………………………… 3

*Talatala v. Nippon Yusen Kaisha Corp.,*
  974 F. Supp. 1321, 1325-26 (D. Haw. 1997) ……………………………  8

*Tokio Marine & Fire Ins. Co. v. Nippon Express U.S.A. (Illinois), Inc.*
  118 F. Supp.2d 997, 1000 (C.D. Cal. 2000) ………………………………… 7

*Vogt-Nem, Inc. v. M/V Tramper*
  263 F. Supp. 2d 1226, 1233 (N.D. Cal. 2002) ……………………………… 10

*Whitman Realty Group, Inc. v. Galano*
  41 A.D.3d 590, 838 N.Y.S.2d 585, 587 (2007) …………………………….. 5

*Yavuz v. 61 MM, Ltd.*
  465 F.3d 418, 428-30 (10th Cir. 2006) ………………………………..12

**MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to the Court's June 16, 2009 Order, Plaintiffs SparkNet Holdings, Inc. ("SparkHold") and SparkNet Communications, L.P. ("SparkComm") (collectively, "SparkNet") submit this Memorandum of Points and Authorities in support of their Renewed Motion to Dismiss Defendant Robert Perry's ("Perry") Third Counterclaim for Conversion pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6) and the Counterclaim in its entirety pursuant to Rule 12(b)(3).

## I.    INTRODUCTION

In order to maintain a claim for conversion under New York law, which indisputably governs claims stemming from the Consulting Agreement attached to Perry's Counterclaim as Exhibit 1, a claimant must plead that he or she at some point in time had title, possession, or control of the items alleged to have been converted. Here, Perry has not alleged – and cannot allege – that he was ever in possession of SparkHold stock, which he claims the SparkNet entities converted from him.  Thus, as set forth below, Perry's Third Counterclaim for Conversion fails as a matter of law.

Moreover, venue for all three of Perry's Counterclaims is improper in this Court. Indeed, Perry's Counterclaims are related to the Consulting Agreement executed between SparkComm and Perry on or about June 16, 2005.  Perry freely entered into and agreed to a fully disclosed, explicit, exclusive forum selection clause as part of the Consulting Agreement, which mandates that any legal action relating to that agreement be brought in a court located in the City of New York.  Perry's Counterclaims should, therefore, be dismissed in their entirety.

## II.    STATEMENT OF FACTS

On January 23, 2008, SparkNet filed suit against Perry and other defendants alleging that they are unlawfully using SparkNet's trademarks JACK.FM and JACK FM (collectively, the "Jack Marks") in connection with internet audio streaming and radio broadcasting services, in violation of SparkNet's senior rights in and to the Jack Marks.  SparkNet's lawsuit is not based on any contract.  SparkNet alleges causes of

action against Perry, among others, for unfair business practices, trademark infringement, interference with business relations, trademark dilution, false designation of origin, and trademark counterfeiting.

Perry filed his Counterclaim against both SparkComm and SparkHold on April 27, 2009.  The Counterclaim relates to a Consulting Agreement executed by Perry and SparkComm on or about June 16, 2005, and which is attached to the Counterclaim as Exhibit 1.  Counterclaim, ¶ 7 and Exhibit 1.  Perry alleges that pursuant to the Consulting Agreement, SparkComm engaged Perry as a consultant in exchange for and [sic] accounting and payment of a 50% profit share of SparkComm's net revenue from SparkComm's licensing of the Jack Marks.  Counterclaim, ¶ 10.  According to Perry, the Consulting Agreement provides that, in exchange for Perry's services, Perry will receive at least $300,000 Minimum Compensation during the period commencing April 1, 2005 and ending September 30, 2008…, and if the minimum compensation is not achieved, Perry is entitled to request an additional "Top-Up Amount" payment equal to the difference between the actual amount received, and the $300,000 minimum compensation.  Counterclaim, ¶ 11.  Perry further alleges that if SparkComm does not pay the Top-Up amount to Perry, SparkComm will then be required to transfer for $1 all of the outstanding shares in the capital of SparkHold, and because SparkHold was the owner of the Jack Marks, ownership of those Jack Marks would revert to Perry.  *Id.*

Perry claims SparkNet prepared fraudulent accountings of its income and expenses in violation of the Consulting Agreement and improperly credited $50,000 toward the Consulting Agreement's $300,000 minimum compensation in violation of the Consulting Agreement. Counterclaim, ¶ 18.  Perry argues that because he did not receive the minimum compensation to which he believes he was entitled, SparkComm was required under the Consulting Agreement to transfer (but did not transfer) all of SparkHold's shares to Perry.  *Id.*  Consequently, Perry alleges claims for breach of the Consulting Agreement, an accounting of SparkComm's business accounts, and

conversion of SparkHold's stock, which he argues should have been transferred to him pursuant to the Consulting Agreement. *Id.* ¶¶ 15-29.

Notably, the Consulting Agreement contains a choice of law and forum selection clause, which provides:

> 8.8     Governing Law and Attornment.  This Agreement shall be governed as to all matters, including validity, construction and performance, by and under the laws of the State of New York.  The parties hereby irrevocably attorn and consent to the jurisdiction of the state and federal courts sitting in the City of New York.

As set forth below, Perry's conversion claim fails because Perry has not alleged, and cannot allege, that he was ever in possession of SparkHold stock, and under New York law, it is improper to recast a breach of contract claim as a conversion claim. Moreover, Perry's Counterclaim should be dismissed in its entirety because, pursuant to the forum selection clause in the Consulting Agreement, venue is only proper in the New York courts.

## III.     PERRY'S THIRD COUNTERCLAIM FOR CONVERSION FAILS UNDER NEW YORK LAW

### A.     Standard of Review

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a counterclaim must be dismissed if it fails to "plead 'enough facts to state a claim to relief that is plausible on its face.'" *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)).  When the legal sufficiency of a complaint's allegations are tested with a motion under Rule 12(b)(6), "[r]eview is limited to the complaint." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993). Although the Court must assume the truth of all properly pleaded allegations of fact for purposes of a 12(b)(6) motion, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Ove v. Gwinn*, 264 F.3d 817,

821 (9th Cir. 2001).  Applying these standards, SparkNet respectfully submits that Perry fails to state a claim for conversion.

### B. Perry's Conversion Counterclaim Fails As A Matter of Law

In his third counterclaim for conversion, Perry has recast his breach of contract claim against SparkNet Communications as a conversion claim against both SparkComm and SparkHold, contending that they converted "[SparkNet Holdings'] stock, wrongfully withholding it from and failing to convey it to Perry, in contravention of Perry's contract rights."  Counterclaim, ¶ 26.  The relevant law in New York[1] is as follows:

> A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession… Two key elements of conversion are (1) plaintiff's possessory right or interest in the property… and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights…

*Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49-50, 827 N.Y.S.2d

---

[1]    The Consulting Agreement contains a New York choice of law provision: "This Agreement shall be governed as to all matters, including validity, construction and performance, by and under the laws of the State of New York."  Counterclaim, Exh. 1, p.7 (¶ 8.8).  The court is obliged to enforce the contractual choice-of-law provision unless: (1) the chosen state has no substantial relationship to Perry, or (2) application of the chosen state's law would contradict a fundamental policy of the state of California and California has a materially greater interest in the matter.  *Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263, 1269 (C.D. Cal. 2008).  The party advocating application of the choice of law provision has the burden of establishing a substantial relationship between the chosen state and the contracting parties.  *Id.*  The burden then shifts to the party opposing application to show that application would violate a fundamental policy of California.  *Id.*

> A 'substantial relationship' between the chosen state and the contracting parties exists if one of the parties is domiciled in the chosen state. [Citation.]  Further, 'if one of the parties resides in the chosen state, the parties have a reasonable basis' for selecting that state. [Citation.]

*Id.*  Here, Perry resides in the State of New York.  Accordingly, Perry's Counterclaims, which are all based on the Consulting Agreement, are governed by New York law.  *See, id.*

96 (N.Y.Ct.App. 2006) (citations omitted).[2]  While shares of stock may be the subject of a conversion action, an action for conversion may not be validly maintained where damages are merely being sought for breach of contract.  *Castaldi v. 39 Winfield Assoc.*, 30 A.D.3d 458, 820 N.Y.S.2d 279 (2006); *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 884, 45 N.Y.S.2d 599, 600 (1982) ("*Peters Griffin*").

     *Peters Griffin* is instructive.  There, the plaintiff had allegedly contracted with defendant WCSC to be its national sales representative in procuring the sale of advertising time for television.  The plaintiff alleged that WCSC wrongfully paid commissions that it was entitled to receive to defendant MMT.  The plaintiff sued WCSC for breach of contract, and also asserted a cause of action for conversion against both WCSC and MMT.  In reversing the decision of the trial court, the appellate court dismissed the plaintiff's conversion claim, holding:

> The plaintiff has never had ownership, possession or control of the money constituting the June commissions.  Therefore, no action in conversion may be brought against WCSC or MMT on that theory.  The plaintiff, of course, may seek to recover those commissions from WCSC under the first cause for breach of contract.

*Id.* at 600; *see also Selinger Enterprises, Inc. v. Cassuto*, 50 A.D.3d 766, 860 N.Y.S.2d 533, 536 (2008) ("The mere right to payment cannot be the basis for a cause of action alleging conversion…."); *Whitman Realty Group, Inc. v. Galano*, 41 A.D.3d 590, 838 N.Y.S.2d 585, 587 (2007) (holding that, on summary judgment, plaintiff did not raise a triable issue of fact with respect to its conversion claim because, at best, plaintiff showed only a contractual right to payment where it never had ownership, possession, or control of the disputed monies); *Castaldi, supra*, 820 N.Y.S.2d at 458-59 ("Although the plaintiff alleged a contractual right to payment for renovation work it

---

[2]     California law is identical: "To establish a conversion, plaintiff must establish an actual interference with his *ownership* or *right of possession*. . . . Where plaintiff neither has title to the property alleged to have been converted, nor possession thereof, he cannot maintain an action for conversion."  *Moore v. Regents of University of California*, 51 Cal. 3d 120, 136, 271 Cal. Rptr. 146 (Cal. 1990) (cite omitted; emphasis original).

1  performed on premises owned by the defendant [], it never had ownership, possession,

2  or control of the proceeds realized from the sale of the renovated premises.

3  Accordingly, the conversion claim asserted against the appellant, who allegedly had

4  control over the sale proceeds, must fail."); *Fiorenti v. Central Emergency Physicians,*

5  *PLLC*, 305 A.D.2d 453, 762 N.Y.S.2d 402, 404 (2003) ("The Supreme Court should

6  have dismissed the plaintiffs' cause of action alleging conversion, since the plaintiffs

7  never had title, possession or control of the funds alleged to have been converted.");

8  *Bank of America Corp. v. Lemgruber*, 385 F. Supp.2d 200, 222 (S.D.N.Y. 2005)

9  (applying New York state law, and stating that "while New York law permits an action

10  for conversion of a specifically identifiable sum of money, [Citation], a plaintiff

11  asserting such claim must allege that he had 'ownership, possession, or control of the

12  money before its conversion.'") (citations omitted)); *ESI, Inc. v. Coastal Power*

13  *Production, Co.*, 995 F. Supp. 419, 433 (S.D.N.Y. 1998) (same); *Aramony v. United*

14  *Way*, 949 F. Supp. 1080, 1086 (S.D.N.Y. 1996) (same).

15       Here, as in *Peters Griffin*, Perry does not allege that he "owned, possessed or

16  controlled" the shares of SparkHold's stock, but, rather, claims a contractual

17  entitlement to the stock pursuant to the Consulting Agreement. *See* Counterclaim, ¶ 26

18  ("SparkComm and SparkHold converted Sparkhold's stock…**in contravention of**

19  **Perry's contract rights**." (emphasis added)). It is well settled under New York law,

20  however, that an alleged breach of contract cannot give rise to a cause of action for

21  conversion. *Peters Griffin, supra*, 452 N.Y.S.2d at 600; *Fiorenti, supra*, 762 N.Y.S.2d

22  at 404 ("To the extent that the Supreme Court found that the bonuses due to the

23  plaintiffs were improperly calculated pursuant to the employment agreements, such a

24  finding establishes a breach of contract, upon which a conversion claim cannot be

25  predicated."); *MBL Life Assurance Corp. v. 555 Realty Co.*, 240 A.D.2d 375, 658

26  N.Y.S.2d 122 (1997) ("It is settled, however, that a claim of conversion cannot be

27  predicated on a mere breach of contract."). Accordingly, Perry's conversion claim

28  should be dismissed.

IV.  **PERRY'S COUNTERCLAIM SHOULD BE DISMISSED IN ITS ENTIRETY BECAUSE VENUE IS ONLY PROPER IN THE CITY OF NEW YORK.**

A.  **The Forum Selection Clause is Presumptively Valid And Does Not Contravene Public Policy Or Principles of Fairness.**

Federal common law governs the enforceability of forum selection clauses in federal court.  *R.A. Argueta v. Banco Mexicano S.A.,* 87 F.3d 320, 324 (9th Cir. 1996) ("*Argueta*") (In federal court, "[f]ederal law governs the validity of a forum selection clause."); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988); *Kelso Enter., Ltd. v. M/V Wisida Frost,* 8 F. Supp.2d 1197, 1201 (C.D. Cal. 1998). Under federal law, the forum selection clause in the Consulting Agreement is "prima facie valid" and should be enforced unless the resisting party clearly can show that "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972) ("*Bremen*"); *see also Spradlin v. Lear Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 867 (9th Cir. 1991).  This mandate has been widely recognized and routinely followed by the courts.  *See, e.g., Manetti-Farrow, supra,* 858 F.2d at 514-15; *Tokio Marine & Fire Ins. Co. v. Nippon Express U.S.A. (Illinois), Inc.,* 118 F. Supp.2d 997, 1000 (C.D. Cal. 2000) ("strong policy favoring enforcement of forum selection clauses"); *Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.,* 690 F. Supp. 891, 894-96 (C.D. Cal. 1988).

Parties resisting enforcement of a forum selection clause bear a "heavy burden of proof" and must "clearly show that enforcement [of the forum selection clause] would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."  *Bremen*, *supra,* 407 U.S. at 15.  Applying *Bremen,* the Ninth Circuit has held that a forum selection clause is unenforceable only where "(1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so 'gravely difficult and inconvenient' that

the complaining party will 'for all practical purposes be deprived of its day in court'; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought." *Argueta*, *supra,* 87 F.3d at 325 (internal citations omitted).

### 3.    THE FORUM SELECTION CLAUSE IS NOT THE RESULT OF FRAUD OR UNDUE INFLUENCE.

Perry does not claim fraud in executing the Consulting Agreement.  A party may not escape a forum selection clause on the basis of fraud unless "the inclusion of that clause in the contract was the product of fraud or coercion." *Batchelder v. Kawamoto,* 147 F.3d 915, 919 (9th Cir. 1998).  Perry's Counterclaims do not allege the forum selection clause in the Consulting Agreement was included in the Agreement due to fraudulent concealment or other wrongful conduct.  Indeed, Perry lives in New York, and such a clause can reasonably be expected to favor him.  He has no credible basis to allege concealment or non-disclosure of the terms of the Consulting Agreement as a means of securing his consent to the forum selection clause and, in truth, he asserts the agreement is valid.

Similarly, Perry cannot point to any exercise by SparkNet of "overweening bargaining power" in connection with the Consulting Agreement. The inclusion of a forum selection clause in a contract does not itself constitute "overweening bargaining power." *See Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 593-94, S. Ct. 1522, 113 L. Ed. 2d 622 (1991).  In *Carnival Cruise Lines,* the Court acknowledged the undoubtedly superior bargaining power of the cruise line and the substantially identical, non-negotiable forum selection clauses included in each cruise passenger's ticket.  Nevertheless, the Supreme Court found that something more than mere size difference must be shown to invalidate such a clause. The Court concluded that the cruise line's forum selection clause, printed on the back of a form passenger ticket, was enforceable inasmuch as the plaintiffs "retained the option of rejecting the contract with impunity." Id. at 595; *see also Talatala v. Nippon Yusen Kaisha Corp.,* 974 F. Supp. 1321, 1325-26 (D. Haw. 1997) (finding no fraud or overreaching where forum

selection clause was "standard language in all [of the defendants'] bills of lading"); *Rini Wine Co. v. Guild Wineries & Distilleries,* 604 F. Supp. 1055, 1058 (N.D. Ohio 1985) ("[T]he fact that the distributor agreements are boilerplate forms should not inherently defeat the validity of a forum-selection clause.").

As a review of the Consulting Agreement indicates, that agreement is tailored to the specific business requirements of the parties, and is not a standard form contract. However, as *Talatala* and *Rini Wine* indicate, even if the forum selection clause in the Consulting Agreement <u>were</u> a standard form agreement SparkNet offered to numerous parties, which it is not, that still would <u>not</u> constitute evidence of "overweening bargaining power." Moreover, like the plaintiff in *Carnival, supra,* Perry had the option of simply choosing not to enter into the Consulting Agreement or not to do business with SparkNet at all. Thus, Perry cannot claim that SparkNet obtained his consent to a New York forum through fraud or other wrongful conduct.

### 4. PERRY, WHO LIVES IN NEW YORK, CANNOT ESTABLISH THAT NEW YORK IS A FORUM SO GRAVELY DIFFICULT AND INCONVENIENT AS TO DEPRIVE HIM OF HIS DAY IN COURT

A party objecting to the enforcement of a forum selection clause on the ground that the agreed-to forum is unreasonable must meet the "'heavy burden of showing that trial in the chosen forum would be so difficult and inconvenient that the party would effectively be denied a meaningful day in court.'" *Argueta*, *supra,* 87 F.3d at 325. "Mere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that the plaintiff received under the contract consideration for these things." *Jack Winter, Inc. v. Koratron Co.,* 326 F. Supp. 121, 126 (N.D. Cal. 1971) (citation omitted).

Perry, who lives in New York, will have a difficult time arguing that a New York venue is so difficult as to deny him his day in court. Further, he cannot show that his counterclaims against SparkNet are "inherently more suited to resolution in" California than New York. *Carnival Cruise Lines, supra,* 499 U.S. at 594. Perry and

1  SparkNet freely negotiated a Consulting Agreement which requires the application of
2  New York law by a New York court.  Consequently, the Southern District of New
3  York, or a New York state court, is the only proper forum for litigating Perry's
4  counterclaims relating to the Consulting Agreement.  Moreover, any minor incremental
5  inconvenience Perry may experience, if any, is insufficient to overcome the strong
6  legal presumption in favor of enforcing the agreed upon forum selection clause.
7  *Spradlin*, *supra,* 926 F .2d at 866, 869 (enforcing forum selection clause designating
8  Saudi Arabia as forum for suit even though the plaintiff was located in the United
9  States).

10      The result is no different, and the forum selection clause is no less enforceable,
11  merely because Perry will have to litigate his counterclaims in New York and defend
12  SparkNet's claims in California.  *Vogt-Nem, Inc. v. M/V Tramper,* 263 F. Supp. 2d
13  1226, 1233 (N.D. Cal. 2002) (enforcing forum selection clause requiring the parties to
14  litigate their dispute in the Netherlands and concluding that, "[w]hile admittedly
15  inconvenient, litigation of this dispute in three fora would hardly 'fragment [the] case
16  beyond recognition'"); *Tokio Marine*, 118 F. Supp. 2d at 1000 (potentially duplicative
17  litigation insufficient to overcome strong policy favoring forum selection clauses).

18      Accordingly, Perry cannot establish any "serious inconvenience" justifying
19  disregard of the otherwise valid forum selection clause in the Consulting Agreement.

20          **5.    ENFORCEMENT OF THE FORUM SELECTION CLAUSE DOES NOT**
21              **CONTRAVENE ANY STRONG PUBLIC POLICY OF CALIFORNIA**
22      Finally, Perry cannot point to any public policy of California that would be
23  impaired by pursuit of his counterclaims in New York.  Both the Ninth Circuit and
24  California courts routinely find forum selection clauses prima facie valid and
25  enforceable.  *See, e.g., Richards v. Lloyd's of London,* 135 F.3d 1289, 1294 (9th Cir.
26  1998); *Manetti-Farrow*, *supra,* 858 F.2d at 514-15; *Smith, Valentino & Smith, Inc. v.*
27  *Superior Court,* 17 Cal. 3d 491,495, 131 Cal. Rtpr. 374 (1976) ("we are in accord with
28  the modern trend which favors enforceability of such forum selection clauses").

1    Far from contravening any public policy, the forum selection clause contained in

2    the Consulting Agreement is reasonable and comports with public policy. The

3    contractually-chosen forum has a strong substantive nexus with the claims to which the

4    selection clause applies. The Consulting Agreement both provides that New York law

5    will apply to any disputes regarding performance, and requires any such disputes to be

6    heard in a court located in New York City.  This is eminently reasonable, as New York

7    courts can be expected to have the greatest familiarity with New York law and to apply

8    it with great consistency.  Further, Perry is a New York resident, which is another

9    reason to favor enforcement of the New York forum selection clause to which Perry

10   agreed.  *See Carnival Cruise Lines, supra,* 499 U.S. at 595 (determining that Florida

11   forum selection clause was fair and made in good faith where petitioner's principal

12   place of business was in Florida and many of its cruises departed from and arrived in

13   Florida ports).  Under the circumstances, the specification of New York City as the

14   exclusive forum for adjudicating disputes relating to the Consulting Agreement is

15   wholly reasonable.

16   In addition, enforcement of the forum selection clause with respect to Perry's

17   counterclaims is consistent with the expectations of the contracting parties. Given the

18   clear and disclosed forum selection provision, Perry, in entering into the Consulting

19   Agreement, necessarily had to expect to litigate any potential future disputes with

20   SparkNet concerning the Consulting Agreement in New York City.  *See Kelso Enter.,*

21   *supra,* 8 F. Supp. 2d at 1205 ("the parties anticipated that any disputes would be heard"

22   in the forum specified in the forum selection clause); *Brinderson- Newberg, supra,* 690

23   F. Supp. at 894 ("when parties negotiate for a forum-selection clause their purpose

24   obviously is to nail down where the action will be tried").

25   Perry willingly consented to a mandatory New York forum selection clause for

26   all disputes relating to the Consulting Agreement.  All three of his counterclaims relate

27   to that agreement.  There is no reasonable basis for declining to enforce the freely

28

1  negotiated terms of that agreement.  Accordingly, pursuant to 12(b)(3), all three of

2  Perry's counterclaims must be dismissed.

3       **B.**    **<u>Under New York Law, the Forum Selection Clause Is Mandatory And</u>**

4           **<u>Should Be Enforced.</u>**

5         Recent decisions in other circuits have indicated that where a contract contains a

6  choice-of-law provision in addition to a forum selection clause, the validity and scope

7  of the forum selection clause should be governed by the contractually chosen law; in

8  this case, New York law.  *See Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 428-30 (10th Cir.

9  2006) (holding that "under federal law the courts ordinarily honor an international

10  commercial agreement's forum-selection provision *as construed under the law

11  specified in the agreement's choice of law provision*"); *Abbott Labs.v. Takeda Pharm.

12  Co.*, 476 F.3d 421, 423 (7th Cir. 2007) ("Simplicity argues for determining the validity

13  and meaning of a forum selection clause … by reference to the law of the jurisdiction

14  whose law governs the rest of the contract in which the clause appears."); *Phillips v.

15  Audio Active Ltd.*, 494 F.3d 378, 384-86 (2nd Cir. 2007) ("we cannot understand why

16  the interpretation of a forum selection clause should be singled out for application of

17  any law other than that chosen to govern the interpretation of the contract as a

18  whole.").  In *Phillips*, the Second Circuit noted that little discussion of the applicability

19  of a choice-of-law provision to the interpretation of a forum selection clause can be

20  found in federal court decisions.  *Phillips*, 494 F.3d at 385.  The court went on to

21  suggest, however, that because choice-of-law provisions implicate the substantive law

22  of the selected jurisdiction, the contractually chosen law should be used to interpret the

23  meaning and scope of a forum selection clause, including the determination of whether

24  the clause is mandatory or permissive.  *Id.*  This, of course, makes sense.  There is no

25  good reason why a contractually-chosen choice-of-law provision should govern every

26

27

28

1  other part of a contract other than its' forum selection provision.[3]

2         The forum selection clause at issue contains the necessary mandatory language

3  under New York law.  In *Cambridge Nutrition A.G. v. Fotheringham*, 840 F. Supp.

4  299, 301 (S.D.N.Y. 1994), a federal district court in New York reviewed a forum

5  selection clause with similar language to the one at issue here, which was also

6  governed by New York state law, and concluded it was valid and mandatory:

7                  "[T]he language in question here – 'This Agreement *shall* be
                   governed by the laws of the State of New York, U.S.A. All
8                  parties hereby submit to the jurisdiction of the courts of the
                   state of New York' (emphasis added) — supports the
9                  construction that the instant clause is 'mandatory.'"

10 *Id.* The *Cambridge Nutrition* court found this language controlling and determined the

11 forum selection clause was enforceable under New York law. *Id.* The clause in the

12 Consulting Agreement has very similar language. Applying *Cambridge Nutrition*, the

13 court in our case should find the Perry forum selection clause is mandatory and

14 exclusive.

15 //

16 //

17

18

19

20

21

22

---

23  [3]      Moreover, the Central District routinely enforces contractual choice-of-law
24  provisions unless: "1) the chosen state has no substantial relationship to the contracting
    parties and no reasonable basis for selecting the state exists; or 2) application of the
25  chosen state's law would contradict a fundamental policy of the state of California and
    California has a materially greater interest in the matter." *Guadagno v. E*Trade Bank*,
26  592 F. Supp. 2d 1263, 1269 (C.D. Cal. 2008).  As established above, Perry lives in
    New York, and the parties negotiated the contract there. Perry has not – and cannot –
27  argue that the Consulting Agreement's choice-of-law provision violates a policy of the
    state of California. The court should, thus, apply New York law when interpreting the
28  agreement's forum selection clause.

---

**V.     <u>CONCLUSION</u>**

For the foregoing reasons, SparkNet respectfully requests that the Court dismiss Perry's Counterclaim, in its entirety, because forum is proper in the New York courts. In the alternative, SparkNet respectfully requests that the Court dismiss Perry's Third Counterclaim for Conversion for the reasons set forth above.

DATED: July 15, 2009                    WILLENKEN WILSON LOH & LIEB LLP


                                        By: */s William A. Delgado*                    .
                                            William A. Delgado
                                            Attorney for Plaintiffs and Counter-Defendants
                                            SparkNet Holdings, Inc. and SparkNet
                                            Communications, L.P.

1

### CERTIFICATE OF SERVICE

2

3      I hereby certify that I electronically filed the foregoing with the Clerk of the

4  Court using the CM/ECF system which will send notification of such filing to the

5  Electronic Service List for this Case.

6      Respectfully submitted this 15th day of July 2009.

7

8  DATED: July 15, 2009              WILLENKEN WILSON LOH & LIEB LLP

9

10                                   By: */s William A. Delgado*                .
                                        William A. Delgado
11                                      Attorney for Plaintiffs and Counter-Defendants
                                        SparkNet Holdings, Inc. and SparkNet
12                                      Communications, L.P.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28