1  William A. Delgado (Bar No. 222666)
   wdelgado@willenken.com
2  WILLENKEN WILSON LOH & LIEB LLP
3  707 Wilshire Blvd., Suite 3850
   Los Angeles, CA 90017
4  Tel: (213) 955-9240
5  Fax: (213) 955-9250

6
   Attorneys for Plaintiffs and Counter-Defendants
7  SPARKNET HOLDINGS, INC. and
   SPARKNET COMMUNICATIONS L.P.
8

9
                 UNITED STATES DISTRICT COURT
10
                 CENTRAL DISTRICT OF CALIFORNIA
11

12 | SPARKNET HOLDINGS, INC., a Nevada | Case No.:  CV 08-08510 GHK (PLAx)
13 | corporation, SPARKNET            |
   | COMMUNICATIONS, L.P., a Nevada   | **PLAINTIFFS' REPLY BRIEF IN**
14 | partnership,                     | **SUPPORT OF ITS RENEWED**
   |                                  | **MOTION TO DISMISS DEFENDANT**
15 |                                  | **ROBERT PERRY'S**
   |                   Plaintiffs,    | **COUNTERCLAIM**
16 |                                  |
17 | v.                               |  Date:  August 10, 2009
   |                                  |  Time:  9:30 a.m.
18 |                                  |  Judge: The Honorable George H. King
19 | ROBERT PERRY, an individual, KRIS |
   | SWEETON, an individual, INDIE    |
20 | RANCH MEDIA, INC., a Colorado    |
   | corporation, NETMIX BROADCASTING |
21 | NETWORK, INC., an unknown entity, |
22 | and JOHN DOES 1-5;               |
23 |                                  |
   |                   Defendants.    |
24
25
26
27
28

REPLY BRIEF ISO OF MOTION TO DISMISS                                    -1-

## I.   INTRODUCTORY STATEMENT

In his Opposition to SparkNet's Motion to Dismiss Counterclaims ("Opposition"), defendant Robert Perry ("Perry") claims his conversion counterclaim must survive as long as he pleads "the right to possession." (Opposition at 11:5-6). But, under New York law, which governs any and all claims arising under the Consulting Agreement attached as Exhibit 1 to Perry's Counterclaim, Perry must allege that he owned, possessed, or controlled the shares of stock he claims SparkNet converted *before his conversion claim arose*. Perry cannot plead rights to shares before his conversion claim arose, and, thus, cannot state a claim. Even if Perry has properly pleaded conversion, his claim fails because, under New York law, when the material facts asserted in a breach of contract claim are the same as those asserted in a conversion claim, the conversion cause of action must be dismissed.

Moreover, SparkNet has not waived its right to challenge venue by filing this lawsuit – which involves claims and issues distinct from the contract claims brought by Perry – in the Central District of California. Perry's counterclaims all stem from SparkNet's purported breach of the Consulting Agreement attached as Exhibit 1 to Perry's Counterclaims; the parties specifically agreed to bring all claims arising from the Consulting Agreement in New York, only; and the contract's choice of forum is controlling and takes precedence. Perry has provided no reason to invalidate the contract's forum selection clause. The Court should, therefore, dismiss Perry's counterclaims for improper venue and require Perry to litigate them in New York, where he resides.

## II.   ARGUMENT

### A.   Perry's Conversion Claim Fails Under New York Law

#### 1.   PERRY HAS NOT PLED THE REQUISITE ELEMENTS OF A CONVERSION CLAIM

Perry does not refute in his Opposition brief (because he cannot) that, pursuant to the Consulting Agreement, New York law governs his conversion counterclaim. *See*

1  *Guadagno v. E\*Trade Bank*, 592 F. Supp. 2d 1263, 1269 (C.D. Cal. 2008) and

2  Counterclaim, Exh. 1, p.7 (¶ 8.8).  He nonetheless cites to irrelevant California law[1] in

3  support of his claim and ignores the well-established authorities cited by SparkNet in

4  pages 5-6 of their Motion papers, which hold that a conversion claim cannot lie where,

5  as here, the plaintiff never had ownership, possession or control of the shares of stock

6  allegedly converted, but only had an alleged contractual entitlement to them.  *See,*

7  *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 45 N.Y.S.2d 599, 600

8  (1982) ("The plaintiff has never had ownership, possession, or control of the money

9  constituting the June commissions.  Therefore, no action in conversion may be brought

10 against WCSC or MMT on that theory.  The plaintiff, of course, may seek to recover

11 those commissions from WCSC under the first cause for breach of contract."); *Fiorenti*

12 *v. Central Emergency Physicians, PLLC*, 305 A.D.2d 453, 762 N.Y.S.2d 402, 404

13 (2003) ("The Supreme Court should have dismissed the plaintiffs' cause of action

14 alleging conversion, since the plaintiffs never had title, possession or control of the

15 funds alleged to have been converted."); *Castaldi v. 39 Winfield Assoc.*, 30 A.D.3d

16 458, 458-59, 820 N.Y.S.2d 279 (2006).

17        Under New York law, to "maintain a claim for conversion, a plaintiff must

18 show: (1) the property subject to conversion is 'a specific identifiable thing;' (2)

19 **plaintiff had 'ownership, possession or control over the property'** *before* **its**

20 **conversion**; and (3) defendant 'exercised an unauthorized dominion over the thing in

21

22 [1]    Although California law does not apply, the California authorities cited by Perry show that Perry's claim would fail under California law as well.  In *Burlesci v.*

23 *Petersen*. 68 Cal.App.4[th] 1062 (1998), the defendant held equipment owned by the plaintiffs as a gratuitous bailee and refused to release it to them on demand claiming he

24 was entitled to hold the equipment as collateral for the plaintiffs' debt.  *Id.* at 1067. Clearly, unlike Perry, the plaintiffs in *Burlesci* owned the equipment before the

25 defendant allegedly converted it.  Similarly, in *Payne v. Elliott*, 54 Cal. 339, 343 (1880), the plaintiff *owned* the shares of stock, but had transferred them to the

26 defendant "in a fiduciary capacity…to hold in trust for the plaintiff."  In *Mears v. Crocker First Nat. Bank*, 84 Cal.App.2d 637 (1948), the plaintiff "was the owner and

27 holder and entitled to the possession of" the shares of stock at issue.  *Id.* at 639. Finally, in *Carey v. Glenco Citrus Products*, 235 Cal.App.2d 572, 580 (1965), the

28 conversion claimant had title to the orange crop at issue before it was allegedly converted.

question, to the alteration of its condition or to the exclusion of the plaintiff's rights.'" *Moses v. Martin*, 360 F.Supp.2d 533, 541 (S.D.N.Y. 2004) (citations omitted) (emphasis added).

Perry has not denied (because he cannot) that he never had ownership, possession or control of the shares of stock allegedly converted, nor has he refuted, distinguished or otherwise dealt with the above-cited authorities which render this undeniable fact fatal to his conversion claim.

### 2.   UNDER NEW YORK LAW, A BREACH OF CONTRACT CLAIM MAY NOT BE RECAST AS A CONVERSION CLAIM

Perry's Opposition also completely ignores the wealth of New York law cited by the SparkNet entities for the proposition that a claim of conversion cannot, as a matter of law, be predicated upon a breach of contract.  *See, Peters Griffin*, 88 A.D.2d 883, 45 N.Y.S.2d at 600 ("However, an action for conversion cannot be validly maintained where damages are merely being sought for breach of contract"); *Fiorenti v. Central Emergency Physicians, PLLC*, 305 A.D.2d 453, 762 N.Y.S.2d at 404 ("To the extent that the Supreme Court found that the bonuses due the plaintiffs were improperly calculated pursuant to the employment agreements, such a finding establishes a breach of contract, upon which a conversion claim cannot be predicated."); *MBL Life Assurance Corp. v. 555 Realty Co.*, 240 A.D.2d 375, 658 N.Y.S.2d 122 (1997) ("It is settled, however, that a claim for conversion cannot be predicated on a mere breach of contract.").  Perry attempts to dispose of this well-established principle by claiming that he is merely "pleading in the alternative."  Opposition, p.13.  But under New York law, when the material facts asserted in a breach of contract claim are the same as those asserted in a conversion claim, the conversion cause of action must be dismissed. *Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 431 (S.D.N.Y. 2004).  Perry does not refute in his Opposition brief that the facts supporting his conversion claim differ from the facts supporting his breach of contract claim.

1    The sole New York case relied upon by Perry in support of his conversion claim

2    is *Moses v. Martin*, 360 F.Supp.2d 533 (S.D.N.Y. 2004).  In that case, the plaintiff

3    hired the defendants as her agents to handle all logistical aspects of her celebrity

4    styling business.  The defendants were supposed to collect payments from clients and

5    remit the payments to plaintiff, less a twenty percent commission.  The defendants

6    breached this agreement by not remitting the payments to plaintiff and lied to the

7    plaintiff, saying that her clients had not paid for their services.  Thereafter, the

8    defendants provided advances to plaintiff and claimed that the plaintiff had to

9    reimburse the defendants for those advances.  When the plaintiff discovered that her

10   clients had indeed been paying for her services and that her agents were pocketing the

11   money that was rightfully hers, she demanded that the defendants remit payment to her

12   but the defendants refused.  *Id.* at 538-42.  She sued for, among other things, breach of

13   contract, fraud and conversion.  Citing *Peters-Griffin, supra*, the Court stated that an

14   action for conversion cannot be validly maintained where damages are merely being

15   sought for breach of contract.  But, because the plaintiff had shown acts that were

16   "unlawful or wrongful as opposed to mere violations of contractual rights," the court

17   found that the conversion claim was distinct from plaintiff's breach of contract claim.

18   *Id.* at 541-42; *see also Fraser v. Doubleday & Co.*, 587 F.Supp. 1284, 1288 (S.D.N.Y.

19   1984) ("[T]o sustain a conversion claim, a plaintiff must allege acts that are unlawful

20   or wrongful as distinguished from acts that are a mere violation of contractual rights.").

21   In this case, unlike in *Moses*, there are no allegations that SparkNet engaged in a

22   pattern of deceiving Perry, and nor are there allegations that SparkNet made any false

23   or misleading representations to Perry regarding the shares of stock.  Here, Perry

24   simply alleges that SparkComm and SparkHold converted SparkHold's "stock,

25   wrongfully withholding it from and failing to convey it to Perry, ***in contravention of***

26   ***Perry's contract rights***."  Counterclaim, ¶ 26 (emphasis added).

27   The facts at issue here are more similar to the facts in *Peters Griffin*, which was

28   discussed at length in SparkNet's Motion, and *Citadel Mgmt. Inc. v. Telesis Trust, Inc.*,

1   123 F. Supp. 2d 133 (S.D.N.Y. 2000) ("*Citadel*").  In *Citadel*, the plaintiff loaned $11

2   million to the defendants in return for defendants making periodic interest payments,

3   assigning ownership of paintings to the plaintiff, and returning the money to the

4   plaintiff at the end of the contract's term.  The defendants took the $11 million and then

5   failed to perform any of their obligations under the contract.  In fact, the complaint

6   alleged that the defendants immediately transferred the plaintiff's funds out of the

7   plaintiff's account, failed to assign the paintings, failed to make any interest payments,

8   and failed to transfer the $11 million back to the plaintiff on the agreed-to date.  *Id.* at

9   149.  The court in *Citadel* nonetheless dismissed the plaintiff's conversion claim as

10  redundant because it sought compensation for the actions the defendants had taken

11  with the money which they possessed solely as a result of breaching the contract. The

12  court reasoned that any harm the plaintiff suffered from the defendants' actions

13  stemmed from the defendants' breach of their contractual obligations. Furthermore, the

14  court noted that the plaintiff would be fully compensated if it prevailed on its breach of

15  contract claim. *Id.* at 149-50. Therefore, the court found the conversion claim

16  duplicative and dismissed it.

17        For these reasons, and for the reasons set forth in SparkNet's moving papers,

18  Perry's Third Counterclaim for Conversion should be dismissed without leave to

19  amend.

20        **B.    THE COUNTERCLAIMS SHOULD BE DISMISSED FOR**

21              **IMPROPER VENUE**

22              **1.    SPARKNET HAS NOT WAIVED THEIR VENUE CHALLENGE BY**

23                    **BRINGING SUIT IN THE CENTRAL DISTRICT OF CALIFORNIA**

24        SparkNet has not waived its objection as to improper venue on Plaintiff's

25  *contract claims* by filing their initial lawsuit for *trademark infringement* in the Central

26  District of California.  This would be true even if the counterclaims were compulsory.

27  For example in *Publicis Comm v. True North Comm., Inc.*, 132 F.3d 363 (7th Cir. 1997)

28  ("*Publicis Comm.*"), the plaintiff filed suit in a Chicago federal district court.  The

1    defendant filed counterclaims, which included allegations that the plaintiff had violated

2    an agreement entered by the parties.  The agreement at issue contained a forum

3    selection clause whereby the parties selected Delaware as their chosen forum.  On

4    appeal, the Seventh Circuit dismissed the counterclaim and held that an otherwise

5    compulsory counterclaim need not be pleaded in pending litigation when a forum

6    selection clause requires the parties to litigate the subject of the counterclaim in another

7    forum.  *Id.* at 365-67; *see also Tokio Marine & Fire Ins. Co. v. Nippon Express U.S.A.*

8    *(Illinois), Inc.*, 118 F.Supp.2d 997, 1000 (C.D.Cal. 2000) (potentially duplicative

9    litigation insufficient to overcome strong policy favoring forum selection clauses).  The

10   court stated:

11             By agreeing to litigate in Delaware all claims arising out of

12             requests under §1.1 of the … agreement, True North promised

13             not to assert such claims in other forums whether or not they

14             would be 'compulsory' counterclaims, and Publicis promised

15             not to contend (in Delaware) that True North should have raised

16             the claim somewhere else.  By presenting the claim in Chicago,

17             True North broke its promise.  The district court should have

18             enforced the … agreement by dismissing the counterclaim.

19   *Id.* at 366.

20         Likewise, here, SparkNet filed its trademark infringement suit in this Court;

21   Perry then filed counterclaims against SparkNet that are directly related to the

22   Consulting Agreement, which, as discussed above, contains a New York forum

23   selection clause.  Even if the counterclaims are compulsory, which they are not,[2]

24   _____

25   [2] Perry's argument in pages 8-9 of his Opposition regarding the supposed compulsory
     nature of his counterclaims is a red herring.  His counterclaims are not compulsory as
26   there is no logical relationship between SparkNet's trademark-related claims and
     Perry's contract claims.  SparkNet is suing Perry for his misuse of trademarks in a
27   manner designed to cause consumer confusion.  In contrast, Perry's counterclaims all
     relate to breaches of the Consulting Agreement and the alleged failure to transfer
28   shares of stock.  The factual and legal issues are not similar, and different evidence
     related to each set of claims.

1    pursuant to *Publicis Comm.*, they are still governed by the Consulting Agreement's

2    forum selection clause.

3        The cases cited by Perry are inapposite.  In *Olberding v. Illinois Central Railway*

4    *Co.*, 346 U.S. 338, 340, 74 S.Ct. 83, 85 (1953), there is no mention of any

5    counterclaims, and there is no contract or forum selection clause at issue.  In that case,

6    the plaintiff sought to use a state nonresident motorist statute to establish venue in a

7    federal court in the state where the accident occurred, neither plaintiff nor defendant

8    being residents of that state.  The Court held the action was improperly laid in the

9    federal court, and that although an out-of-state driver is said to have consented to the

10   jurisdiction of the state courts, there is nothing to indicate that such a driver has waived

11   his federal venue rights.  *Id.* at 341.

12       *Competitive Technologies v. Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1142 (N.D.Cal.

13   2003) is also inapplicable.  There, the case was transferred from an Illinois court to the

14   Northern District of California, and following transfer, the plaintiff continued to

15   prosecute the action in the Northern District of California, and appeared before the

16   court on numerous occasions without ever asserting a lack of personal jurisdiction.  *Id.*

17   at 1141-42.  A year later, the plaintiff moved to dismiss the defendant's counterclaims,

18   arguing for the first time that the Northern District of California lacked personal

19   jurisdiction over it.  The court stated: "Competitive [the plaintiff] has provided no

20   authority in support of this argument and has not explained why it has never, in the

21   year since this case was transferred to the Northern District of California, brought a

22   motion to dismiss for lack of personal jurisdiction."  *Id.*  The court thus found that the

23   plaintiff waived his right to challenge personal jurisdiction.  Notably, there was no

24   applicable forum selection clause in *Competitive Technologies.*

25       In cases that involve forum selection clauses, courts generally enforce the will of

26   the parties:

27           In general, we have held that a party that has consented to
             personal jurisdiction when the party took some kind of
28           affirmative act – accepting a forum selection clause, submitting

REPLY BRIEF ISO OF MOTION TO DISMISS                                    -8-

> a claim, filing an action – that fairly invited the court to resolve the dispute between the parties.  By contrast, where a party has filed a timely and unambiguous objection to the court's jurisdiction, we have concluded that the party has not consented to jurisdiction.

*SEC v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007).  Perry and SparkNet freely consented to the forum selection clause, which requires that all claims arising out of the Consulting Agreement be brought in the courts sitting in the City of New York.  SparkNet timely objected to venue in this court relating to Perry's counterclaims, all of which are based on an alleged breach of the Consulting Agreement.  As *Publicis Comm.* and the *Ross* court indicate, there is no inconsistency in litigating SparkNet;s trademark-related claims in this forum, while requiring Perry's contract-based counterclaims to be litigated in New York in accordance with the parties' prior agreement.

### 2.    THE FORUM SELECTION CLAUSE IS MANDATORY AND EXCLUSIVE

The court's decision in *Cambridge Nutrition A.G. v. Fotheringham*, 840 F. Supp. 299, 301 (S.D.N.Y. 1994) supports a holding that New York is the exclusive forum for disputes relating to the Consulting Agreement.  The court in that case determined that the following language supported the mandatory and exclusive nature of the clause at issue: "This Agreement shall be governed by the laws of the State of New York, U.S.A. All parties hereby submit to the jurisdiction of the courts of the state of New York." *Id.*  The clause in the Consulting Agreement has similar language; both agreements provide that they "shall be" governed by New York law and in both agreements, the parties either "submit" or "irrevocably…consent" to the jurisdiction of the New York courts.  SparkNet respectfully submits that this Court should follow *Cambridge Nutrition* and require Perry to litigate his contract-related counterclaims exclusively in New York, as required by the parties' agreement.

1  **III.   CONCLUSION**

2          For the foregoing reasons and for the reasons set forth in SparkNet's moving

3  papers, SparkNet respectfully requests that the Court dismiss Perry's Counterclaim, in

4  its entirety, because forum is proper in the New York courts, or, in the alternative,

5  dismiss Perry's Third Counterclaim for Conversion.

6  DATED: August 3, 2009                    WILLENKEN WILSON LOH & LIEB LLP

7

8

9                                          By: */s William A. Delgado*                    .
                                               William A. Delgado
10                                             Attorney for Plaintiffs and Counter-Defendants
                                               SparkNet Holdings, Inc. and SparkNet
11                                             Communications, L.P.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2

3        I hereby certify that I electronically filed the foregoing with the Clerk of the

4   Court using the CM/ECF system which will send notification of such filing to the

5   Electronic Service List for this Case.

6        Respectfully submitted this 3rd day of August 2009.

7

8   DATED: August 3, 2009              WILLENKEN WILSON LOH & LIEB LLP

9

10                                     By: */s William A. Delgado*                .
                                           William A. Delgado
11                                         Attorney for Plaintiffs
                                           SparkNet Holdings, Inc. and SparkNet
12                                         Communications, L.P.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28